# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRANCE JOHNSON, R53900, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 17-cv-06217 |
| v. ) | |
| ) | |
| KEVIN KINK, Warden, ) | Judge Thomas M. Durkin |
| Lawrence Correctional Center, ) | |
| ) | |
| Respondent. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

On August 25, 2017, petitioner Terrance Johnson filed a petition for relief from a state court conviction under 28 U.S.C. 2254. R. 1. The State has moved to dismiss the petition as untimely. R. 10. For the following reasons, the State's motion to dismiss is granted and Johnson's petition is denied.

### Background[1]

On July 18, 2001, Zhontele Payne was killed and James Williams was injured in a gang-related, drive-by shooting in Chicago. R. 10-1 at 7. Early in the morning the next day, Johnson was arrested and confessed to the shooting. *Id.* Following a jury trial, he was convicted of the first-degree murder of Payne and the aggravated battery

---

[1] The facts underlying Johnson's conviction as determined by the state courts are presumed correct. 28 U.S.C. § 2254(e)(1). Johnson has the burden of "rebutting the presumption of correctness through clear and convincing evidence." *Id.*

1

of Williams. Johnson was sentenced to consecutive terms of imprisonment of forty-five years for the murder and six years for the aggravated battery. *Id*.

### C. Direct Appeal

Johnson raised six claims on appeal: (1) the trial court erred in failing to suppress his pre-trial confession on right to counsel grounds; (2) the trial court erred by barring his prior attorney from testifying about Johnson's assertion of the right to counsel; (3) defense counsel was ineffective at trial; (4) the prosecutor committed error in his rebuttal during closing arguments; (5) the trial court erred by admitting into evidence William's written statement and grand jury testimony after he recanted at trial; and (6) the mittimus[2] must be corrected because it incorrectly listed the number of days Johnson spent in custody. *Id*. On September 8, 2008, the appellate court affirmed Johnson's conviction but corrected the mittimus. *Id*. at 20. Johnson filed a petition for leave to appeal in the Illinois Supreme Court, which the Court denied on January 28, 2009. *Id*. at 22. Johnson did not file a petition for writ of certiorari in the United States Supreme Court.

### D. State Post-Conviction Proceedings

On July 31, 2009, Johnson filed a post-conviction petition. He argued that his trial counsel was ineffective and that the admission of his coerced confession deprived him of a fair trial. *Id*. at 25. On September 25, 2009, the trial court dismissed this petition at the first stage on *res judicata* grounds, finding Johnson had already raised

---

[2] The mittimus shows how many days of credit a defendant is entitled to receive for days actually served. *See* R. 10-1 at 20.

2

the issues on direct appeal. *Id.* at 25-26. Johnson filed a notice of appeal on October 26, 2009, which the trial court dismissed as untimely on November 6, 2009. *Id.* at 23. The trial court's order explained that Johnson could file a "late notice of appeal" before the appellate court. R. 10-1 at 23. But there is no indication from the record that Johnson filed a subsequent late notice of appeal. *See id.* at 26 (noting the trial court's dismissal of Johnson's postconviction petition was not appealed); *see also* R. 1 at 3.

### E. Successive Post-Conviction Petitions

On June 29, 2012, Johnson filed a motion for leave to file a successive post-conviction petition. R. 10-1 at 26. He argued that his initial post-conviction counsel did not provide reasonable assistance because the counsel simply repeated two of the claims Johnson had made on appeal, which were "doomed to immediate failure" on *res judicata* grounds, and also did not timely file a notice of appeal of the denial of Johnson's initial postconviction petition. *Id.* The trial court accepted, "[f]or the sake of [Johnson's] petition," his allegations about his ineffective post-conviction counsel as true and found that he demonstrated cause for his failure to bring the claim in his initial post-conviction petition, but that Johnson was nevertheless unable to establish prejudice resulting from that failure. *Id.* Consequently, on November 29, 2012, the trial court denied Johnson's motion. *Id.* at 26-27. Johnson filed a notice of appeal from that denial on December 5, 2012. *Id.*

While Johnson's motion for successive post-conviction petition was pending, Johnson filed a petition for relief pursuant to 735 ILCS 5/2-1401 on November 8,

3

2012, requesting a new trial based on newly discovered evidence. *Id*. at 27. Specifically, Johnson claimed that his defense counsel had become aware of a prison inmate named Kendrick Butler who identified himself as an eyewitness to the shooting. Butler claimed that an individual named J.R. committed the murder, not Johnson. *Id*. Johnson supplemented his 2-1401 petition on March 22, 2013 with a letter from Butler, as well as an affidavit attesting to the accuracy of the facts stated in the letter. Butler stated that he had been friends with the victims, and that on the night of the shooting he observed a light-skinned man known as J.R. drive by and shoot the victims. *Id*. Butler's letter also stated that he was "110% sure it wasn't Terrance Johnson who murdered my friend." *Id*. Butler explained that he "recently gave my life to Allah/God/Budda/Messia [ ] so I feel I should do the right thing because my conscious [ ] is killing me." *Id*. Subsequent additions to the letter indicated that Butler was delayed in sending it due to problems obtaining notarization of the accompanying affidavit. On July 2, 2013, the trial court denied Johnson's 2-1401 petition, finding it had been filed beyond the two-year statute of limitations for such petitions. *Id*. Johnson appealed on July 22, 2013. *Id*.

On October 30, 2013, the Illinois appellate court consolidated Johnson's appeal from the denial of his motion for leave to file a successive post-conviction petition and his 2-1401 petition for relief. *Id*. The appellate court affirmed the denial of both petitions on April 29, 2016. *Id*. at 30. The court held Johnson had failed to demonstrate cause for his failure to bring his successive post-conviction arguments in his initial post-conviction proceedings or prejudice resulting from that failure and

4

that Johnson's section 2-1401 petition was filed well outside the two-year statute of limitations for such petitions. *Id*.

Johnson filed a petition for leave to appeal that ruling to the Illinois Supreme Court, which denied his petition on September 28, 2016. *Id*. at 32. The United States Supreme Court denied Johnson's writ of certiorari on April 3, 2017. *Id*. at 33.

**F.     Habeas Petition**

Johnson filed this petition for a writ of habeas corpus on August 25, 2017. In his petition, Johnson argues that (1) he received ineffective assistance of counsel due to his counsel's conflict of interest; and (2) he has a free-standing claim of actual innocence based on Butler's letter and affidavit. R. 1 at 5. The State has moved to dismiss his petition as untimely. R. 10. In response, Johnson concedes his petition is untimely, but asks that equitable tolling be applied. R. 13 at 2. He also argues he is entitled to the actual innocence exception. *Id*. at 6.

**Analysis**

**I. Timeliness**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Relevant here, the limitation period begins on the date after the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). The time during which a post-conviction petition is pending, however, is not counted toward the limitation period. 28 U.S.C. § 2244(d)(2).

5

The Illinois Supreme Court denied Johnson's petition for leave to appeal his conviction on January 28, 2009. R. 10-1 at 22. Johnson's opportunity to file a petition for a writ of certiorari in the United States Supreme Court expired ninety days later, on April 28, 2009. *See* Sup. Ct. R. 13. Thus, the one-year period of limitation for purposes of the AEDPA began to run on April 29, 2009. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Anderson v. Litscher,* 281 F.3d 672, 674 (7th Cir. 2002) ("[O]ur inquiry here involves the question of whether the ninety day period after a direct appeal during which a petition for writ of certiorari may be filed by a state prisoner falls within the meaning of section 2244(d)(1)(A) for purposes of determining when the statute of limitations begins to run. We believe that it does.").

Johnson submitted his first state post-conviction petition on July 31, 2009. As of that date, 93 days of the one-year limitations period had elapsed. Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Johnson's post-conviction petition was dismissed on September 25, 2009. His opportunity to file a notice of appeal expired on October 25, 2009, and his one-year limitations period restarted after that date. Ill. Sup. Ct. R. 606(b) ("[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from."); *Randall v. Duncan*, 244 F. Supp. 3d 782, 785 (N.D. Ill. 2016) ("[Petitioner's] post-conviction petition ceased to be 'pending,' for purposes of AEDPA, thirty days after it was denied."). On October 26, 2009, Johnson thus had 272 days remaining, until July 24,

2010, to file his habeas petition. Johnson did not file this habeas petition until August 25, 2017.

Johnson's late notice of appeal from his post-conviction petition filed on October 26, 2009 does not toll the limitations period because only "properly filed" applications toll the limitations period. 28 U.S.C. § 2244(d)(2). An application is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Such rules governing filings include "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* Whether a petition is "properly filed" is determined by looking at how state courts treated it. *Johnson v. McCaughtry*, 265 F.3d 559, 564 (7th Cir. 2001). "If a state court accepts and entertains the petition on its merits, it has been 'properly filed;' however, if a state court rejects it as procedurally irregular, it has not been 'properly filed.'" *Id.* Here, the Illinois trial court rejected Johnson's late-filed notice of appeal but gave him the opportunity to file a "late notice of appeal" before the appellate court. R. 10-1 at 23. Johnson did not file such an appeal before the appellate court. Accordingly, his late-filed notice of appeal was not properly filed and does not toll the limitations period. *See Gonzalez v. Atchinson*, 2015 WL 1502240 at *2 (N.D. Ill. Mar. 26, 2015) ("[W]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of §2244(d)(2). The mere fact that [petitioner] unsuccessfully sought leave to file a late notice of appeal . . . does not warrant deviation from this basic principle.").

7

Johnson's 2012 successive post-conviction petition and section 2-1401 petition also do not toll the limitations period because they were filed after the one-year limitations period had expired. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("[A] state proceeding that does not begin until the federal year has expired is irrelevant."). Johnson's August 2017 petition fell well outside the one-year limitation period and is therefore untimely.

## II. Equitable Tolling

Johnson argues that his counsel's actions and performance should toll the limitations period. R. 13 at 2-5. Untimely petitions can be saved by equitable tolling. *Gray v. Zatecky*, 865 F.3d 909, 912 (7th Cir. 2017). But equitable tolling of a statute of limitations is "an extraordinary remedy that is rarely granted." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights with reasonable diligence, and (2) that some extraordinary, nearly insurmountable circumstance outside his control stood in his way and prevented timely filing. *Id.* The petitioner bears the burden of establishing each of these elements. *Id.* If he cannot demonstrate either of the elements, then equitable tolling will not be applied. *Id.* This Court must evaluate the petitioner's circumstances holistically, considering "the entire hand that the petitioner was dealt" rather than taking each fact in isolation. *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014). Equitable tolling is a "highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." *Id.* at 684. The Court will address each element in turn.

### A. Reasonable Diligence

A petitioner exercises reasonable diligence in pursuing his rights when he writes his attorney "numerous letters seeking crucial information and providing direction," "repeatedly contact[s] the state courts, their clerks, and the [state] bar association," and prepares "his own habeas petition *pro se* and promptly fil[es] it with the District Court" the same day he discovers the limitations period has expired. *See Holland v. Florida*, 560 U.S. 631, 653 (2010). Reasonable diligence is also established when a petitioner repeatedly requests access to his files, pleads with the public defender's office for help, and alerts the court "before the deadline arrived" that he sought to preserve his rights. *See Socha*, 763 F.3d at 687-88.

Johnson argues his "due diligence remained steadfast," because he and his family complained about his original post-conviction attorney "without delay" to the ARDC before hiring a new attorney to file his successive post-conviction filings. R. 13 at 5. But Johnson's argument applies to his state post-conviction proceedings, not this habeas petition. Johnson offers no evidence or argument to suggest he was similarly diligent in filing *this* petition. *See, e.g., Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010) ("An illness that justifies a belated state filing does not automatically justify an untimely federal filing more than a year later.").

Even if the Court applies Johnson's arguments to this habeas petition, Johnson has not demonstrated reasonable diligence. Unlike the petitioners in *Holland* and *Socha*, Johnson did not seek to mitigate the late filing as soon as he discovered the limitations period expired. Rather, Johnson waited almost three years—until the Fall

of 2012[3]—to hire a new post-conviction attorney after his first attorney untimely filed the notice of appeal in November 2009. R. 17 at 3.

Johnson then did not file this habeas petition until five years after he hired the second attorney to file the successive post-conviction petitions. This can hardly be characterized as reasonable diligence. *See, e.g.*, *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010) (waiting "nearly a year from the withdrawal of his previous state court petition to begin his final attempts at state court review" did not constitute reasonable diligence).[4]

Johnson does not meet the first element of the *Holland* test.

### B. Extraordinary Circumstances

Even if Johnson could show reasonable diligence, he also fails to meet the extraordinary circumstances prong. Johnson must demonstrate that extraordinary circumstances outside of his control and through no fault of his own prevented him from filing his petition in a timely manner. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Extraordinary circumstances warranting equitable tolling include "mental incompetence," *Davis v. Humphreys*, 747 F.3d 497, 499 (7th Cir. 2014), "intentional confiscation of a prisoner's . . . legal papers by prison officials,"

---

[3] Johnson attaches a letter from his successive post-conviction attorney from November 2012. R. 17 at 8. It is unclear when he hired that attorney, but the Court will presume it was at least a month before the letter was sent.

[4] Johnson cites *Dumer v. Berge*, 975 F. Supp. 1165 (E.D. Wis. 1997) in support of his argument that he exercised reasonable diligence. *Dumer* is not on point. *Dumer* involved an attorney who failed to perfect an appeal for a client who had directly asked him to do so. *Id.* at 1173. Here, on the other hand, Johnson waited years before hiring a new attorney or filing his habeas petition.

*Weddington v. Zatecky*, 721 F.3d 456, 464-65 (7th Cir. 2013), and a perfect storm of dilatory conduct by a petitioner's former counsel and prison officials. *See Socha*, 763 F.3d at 685-87.

Johnson argues that his initial post-conviction counsel's conduct constitutes extraordinary circumstances sufficient to equitably toll the habeas limitations period. Principally, he argues that his counsel improperly litigated claims she "should know" would have been dismissed under the doctrine of *res judicata*. R. 13 at 4. Johnson further argues that his attorney's actions prevented him from meeting the limitation period, *id.*, and that his counsel's filing of a late notice of appeal is "unequivocally egregious," *id.* at 5. Again, Johnson's complaints relate to his first post-conviction proceeding in state court, not to the late filing of this habeas petition, which was filed almost eight years after the attorney's conduct of which he complains.

More relevant to this petition are Johnson's complaints regarding his second post-conviction attorney who was also hired to file his habeas petition. Johnson argues that attorney abandoned him just before filing this petition. R. 17 at 3-4. But the letter Johnson attaches as support of that argument indicates that the reason for the "abandonment" was that Johnson failed to make the required payments to his attorney and failed to call his attorney to explain why the payment had not been made. R. 17 at 9. Further, the attorney sent Johnson a letter indicating that he had "completed drafting the habeas" petition and gave it to Johnson to file pro se. *Id.* He also repeatedly told Johnson to "not blow [the] deadline to file" and explained to

11

Johnson the filing fee requirement. *Id*. Regardless, that attorney was hired in 2012, two years after the habeas limitations period had expired.

Even if the limitations period had not expired, attorney errors do not rise to the level of "extraordinary circumstances" required to equitably toll a late habeas petition. *See Lawrence*, 549 U.S. at 336-37 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."); *Socha*, 763 F.3d at 685 ("The Supreme Court has identified some types of errors (such as miscalculation of a deadline) that do not warrant relief . . . these errors are too common to be called 'extraordinary.'"); *Modrowski v. Mote*, 332 F.3d 965, 967 (7th Cir. 2003) ("[A]ttorney negligence is *not* grounds for equitable tolling.") (emphasis in original).

Johnson cites to *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001), *overruled in part by Carey v. Saffold*, 536 U.S. 214 (2002) and *Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003), in support of his argument that his attorney's misconduct warrants equitable tolling. Neither case supports tolling the limitations period. In *Nara*, the attorney misconduct allegations were more serious than they are here: Nara's attorney allegedly failed to inform Nara about a state supreme court ruling regarding his case, did not remove herself after that decision, and told Nara there were no time limits at all for filing a habeas petition. *Nara* 264 F.3d at 320. The court decided to hold an evidentiary hearing to determine whether Nara's serious allegations of attorney misconduct were true and to determine how his mental incompetency affected the filing of his habeas petition. *Id*. There are no such

12

allegations of severe attorney misconduct or mental incompetency here warranting an evidentiary hearing. In *Baldayaque*, the attorney never met or spoke with his client, did no legal research on his client's behalf, did not properly keep his client informed or explain matters to his client, and failed to file any habeas petition after his client had specifically directed him to. *Baldayaque*, 338 F.3d at 152. The court held that normal errors made by attorneys (such as missing deadlines) do not justify equitable tolling, but extreme situations such as the attorney's misconduct in *Baldayaque* require a different result. *Id.*

Johnson's case, on the other hand, falls into the "normal errors" category, which does not warrant equitable tolling. Johnson therefore also fails to meet the extraordinary circumstances element requirement for equitable tolling.

### III. Actual Innocence

Finally, Johnson points to Butler's affidavit as evidence that entitles him to the actual innocence exception. R. 1 at 5c. A petitioner may be entitled to equitable tolling if he "makes a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To meet the "demanding" standard for actual innocence, *Blackmon v. Williams*, 823 F.3d 1088, 1101 (7th Cir. 2016), Johnson must show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. The type of evidence needed such that "no juror, acting reasonably," would convict must be "powerful." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have

documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.").

Johnson argues that the 2012 affidavit of Butler, a prison inmate who claims to have seen the shooting and is "110% sure" it was not Johnson, R. 1 at 5c, is the type of "powerful" evidence such that "no juror, acting reasonably," would convict him. Butler's affidavit does not meet the "demanding" standard of the actual innocence exception. First, "eleventh hour" affidavits are "inherently suspect." *McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013); *see also Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (rejecting affidavits prepared "seven years after the murder"). Regardless, even accepting Butler's late affidavit, the evidence against Johnson was overwhelming. The evidence included (1) Johnson's videotaped confession to police; (2) Williams, the surviving victim, identifying Johnson as the shooter in a written statement to police and in his grand jury testimony;[5] and (3) Johnson admitting at trial that the van the shooter used belonged to him. R. 10-1 at 24-25. Further, the alibi defense Johnson offered at trial—that he was at his girlfriend's house at the time of the shooting—was contradicted by his girlfriend's prior statements to police because she had previously testified that he had left her house *before* the shooting occurred.[6] *Id*. Butler's affidavit does not contradict this overwhelming evidence

---

[5] Williams recanted his testimony at trial. R. 10-1 at 8. Williams's testimony was impeached, and his written statement and testimony were presented to the jury. *Id.*

[6] 725 ILCS 5/115-10.1 allows admission of prior inconsistent statements as substantive evidence at trial when certain statutory conditions are met.

14

against Johnson. *See Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010) (exculpatory affidavits from an alibi witness and eyewitness were insufficient to demonstrate actual innocence given other eyewitness testimony and petitioner's inculpatory statements). Equitable tolling of the statute is not warranted under the actual innocence exception.

## IV. Certificate of Appealability

Finally, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler,* 132 S. Ct. 641, 649 n.5 (2012) ("Habeas Corpus Rule 11(a) requires district judges to decide whether to grant or deny a COA in the first instance."). To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Here, the Court's denial of Johnson's claims rests on well-established precedent. Accordingly, certification of any of Johnson's claims for appellate review is denied.

**Conclusion**

For the foregoing reasons, the Court grants the State's motion to dismiss, R. 10, and denies Johnson's petition, R. 1. The Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

Dated: August 14, 2018

_____
Honorable Thomas M. Durkin
United States District Judge